[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Northeast Waste Systems, Inc. and Automated Salvage Transport, Inc., have brought this action seeking payment for services which they claim they rendered and for which they have not been paid in connection with a public works construction project, the demolition of the Edward Malley building in New Haven. The defendants Stamford Wrecking Company and United States Fidelity and Guaranty Company have moved for summary judgment with respect to the fifth and sixth counts of the complaint which seek payment pursuant to a labor and material bond established in accordance with General Statutes § 49-41. The issue presented by the motion is whether the plaintiffs, as fourth tier subcontractors on the public works project, may seek recovery from the CT Page 6539 bond.
The defendants asserts that recovery pursuant to General Statutes §49-42 is barred because the plaintiffs lack a direct contractual relationship with the project contractor or with a subcontractor. The plaintiffs contend that the protections of the statute extend beyond second tier subcontractors. The plaintiffs also claim that the terms of the bond provide recovery beyond that mandated by the statute and enable them to collect from the bond. For the foregoing reasons, the court agrees with the plaintiffs that the bond by its terms extends rights to parties providing services to the public works project beyond those required by statute and authorizes them to bring suit and execute on the bond.
"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Scrapchansky v. Plainfield,226 Conn. 446, 450 (1993). In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather, to determine whether any such issues exist. Cortes v. Cotton,31 Conn. App. 569, 575 (1993). [I]n deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Johnson v. Meehan,225 Conn. 528, 535 (1993). Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . Hammer v. Lumberman's MutualCasualty Co., 214 Conn. 573, 578 (1990)." (Internal quotation marks omitted.) Warner v. Lancia, 46 Conn. App. 150, 158
(1997).
The relevant statutes at issue here, General Statutes §§ 49-41 and49-42, govern the provision of bonds guaranteeing payment on public works projects. The principles that this court should use in considering the claims of the parties with respect to these statutes were clearly enunciated by the Connecticut Supreme Court in Blakeslee Arpaia Chapman,Inc. v. El Const., Inc., 239 Conn. 708 (1997). "General Statutes (Rev. to 1983) §§ 49-41 through 49-43, which provide for the furnishing of bonds guaranteeing payment (payment bonds) on public works construction projects, were enacted to protect workers and materials suppliers on public works projects who cannot avail themselves of otherwise available remedies such as mechanic's liens. Section 49-41 requires that the general contractor provide a payment bond with surety to the state or governmental subdivision, which bond shall guarantee payment to those who supply labor and materials on a public works project. Section 49-42
CT Page 6540 provides that any person who has performed work or supplied materials on a public works project, but who has not received full payment for such materials or work, may enforce his right to payment under the payment bond. This legislation, known as the `Little Miller Act' (act), was patterned after federal legislation popularly known as the Miller Act; 40 U.S.C. § 270a through 270d; and, therefore, we have regularly consulted federal precedents to determine the proper scope of our statute. The federal precedents, like our own, counsel liberal construction of statutory requirements other than those relating to specific time constraints. As the United States Supreme Court has stated, the federal Miller Act is highly remedial in nature and entitled to a liberal construction and application in order properly to effectuate the legislative intent to protect those whose labor and materials go into public projects." (Internal quotation marks and citations omitted.) Id., 714-716.
While it is indisputable that § 49-42 must be liberally construed in favor of those whom it is designed to protect, "a recital of this general principle . . . merely begs the question of whom the legislation is, in fact, intended to protect." Dysart Corp. v. Seaboard Surety Co.,240 Conn. 10, 18 (1997). The defendants contend that the statute is intended to protect only those parties providing labor or materials to a public works project who lie within the second tier of subcontractors on the project, otherwise known as a sub-subcontractor,"[1] and that the statutory protections do not extend beyond such parties. The language of the statute and the case law interpreting it support the defendants' position.
Section 49-42 (a) provides that "Any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing the payment bond shall have a right of action upon the payment bond upon giving written notice of claim as provided in this section." This provision has been found to limit the class of claimants who may seek payment under the statutory bond to those who have a direct contractual relationship with a project contractor or subcontractor. Dysart Corp. v. Seaboard Surety Co., supra, 240 Conn. 15. See also American Masons' Supply Co. v. F.W. Brown Co., 174 Conn. 219,226-227 (1978). "The purpose of limiting the right of action upon the bond to only those having a direct contractual relationship with a subcontractor is to prevent the imposition of unlimited liability upon the prime contractor and his surety." Id., 227.
The plaintiffs are not parties having a direct contractual relationship with a subcontractor within the meaning of § 49-42 (a). "A subcontractor is one who performs for and takes from the prime contractor a specific part of the labor or material requirements of the original CT Page 6541 contract." Id. 226, quoting MacEvoy Co. v. United States, 322 U.S. 102,108 (1944). The United States Supreme Court has interpreted the term "subcontractor" used in the comparable federal statute, the Miller Act, 40 U.S.C. § 270a through 270d, as meaning one who contracts with a prime contractor; it does not encompass a "sub-subcontractor." J.W.Bateson Co. v. Board of Trustees, 434 U.S. 586, 587 (1978). As a result, the court in J.W. Bateson Co. held that a party performing work on a public works project with a direct contractual relationship with a sub-subcontractor, but not with a subcontractor, was not entitled to the protections of the Miller Act. In other words, the Act's protections extended no further than sub-subcontractors or second tier subcontractors. Id., 591. See also American Masons' Supply Co. v. F.W.Brown Co., 174 Conn. 219, 226 (1978) (the Connecticut Supreme Court stated that the plaintiff in that case "would stand in too remote a relationship to secure the benefits of the bond" if it did not have a direct contractual relationship with a subcontractor.)
In light of the United States Supreme Court's decision in J.W. BatesonCo. and the Connecticut Supreme Court's direction to consult federal precedents to determine the proper scope of our statute, the defendants correctly assert that the protections of Connecticut's "Little Miller Act" do not embrace fourth tier subcontractors such as the plaintiffs. See Summit Crane Co. v. Continental Metalcraft, Superior Court, judicial district of New Haven, Docket No. CV 93035564S (Sep. 26, 1996) (Corradino, J.) and Bleiler v. Metcalf Eddy, Inc., Superior Court, judicial district of Hartford at Hartford, Docket No. CV 98-0580066S (Feb. 17, 1999) (Fineberg, J.).
The plaintiffs assert however that, notwithstanding the extent of the statutory protections, the bond itself authorizes to bring suit on the bond all parties, including fourth tier subcontractors such as themselves, who have furnished labor or material for the public works project and who have not been paid. The court agrees.
The parties to a public works construction project who execute a payment bond pursuant to § 49-41 have the authority to expand coverage beyond that required by statute. Herbert S. Newman Partners v.CFC Construction Ltd. Partnership, 236 Conn. 750, 758 (1996). "Although the surety's liability on the bond must be at least coextensive with the obligation imposed by the Miller Act; the statutory requirements establish only a floor of protection beneath which the coverage of a payment bond cannot fall, rather than an upper limit upon the scope of a bond's coverage. In other words, the provisions of the payment bond may create more extensive liability for the surety than that required by the act." (Citations and internal quotations omitted.) Blakeslee ArpaiaChapman, Inc. v. El Const., Inc., 239 Conn. 708, 716-717 (1997). CT Page 6542
The labor and material bond at issue here states that it was furnished pursuant to § 49-41 and provides that "Any party, whether asubcontractor or otherwise, who furnishes materials or supplies or performs labor or services in the prosecution of the work under said contract, and who is not paid therefor; may bring a suit on this bond in the name of the person suing, prosecute the same to final judgment, and have execution thereon for such sums as may be justly due." (Emphasis supplied.) The precise terms of the bond provide that "any party" who furnishes materials or labor for the project and who has not been paid may sue on the bond. Unlike the statute, the language of the bond does not limit the parties who may sue to those who have "a direct contractual relationship with a subcontractor." Rather, the bond explicitly states that a party with the right to recover may be "a subcontractor or otherwise." If the prime contractor and the surety company had intended to limit the coverage of the bond to those with a direct contractual relationship with a subcontractor, they could have easily done so.
Even if the court were to view this provision as raising an ambiguity concerning the bond's coverage, it must be interpreted against the defendants since the bond was furnished by them. Herbert S. Newman Partners v. CFC Construction Ltd. Partnership, supra, 236 Conn. 759. "The defendants are knowledgeable and commercially sophisticated parties. They do not claim that there were improprieties in the contract formation process. In the absence of any other countervailing policy reason, they are bound by the express terms of the payment bond that they themselves drafted and executed."[2] Id., 760.
Accordingly, the defendants' motion for summary judgment is hereby denied.
BY THE COURT
Judge Jon M. Alander