COMMISSIONER OF LABOR *v.*
C.J.M. SERVICES, INC., ET AL.
(AC 22090)

Lavery, C. J., and Bishop and Peters, Js.

---

Argued May 2—officially released October 15, 2002

*Glenn A. Woods*, assistant attorney general, with whom were *Edward F. Reynolds*, assistant attorney

general, and, on the brief, *Richard Blumenthal*, attorney general, and *Judith A. Brown*, assistant attorney general, for the appellant (commissioner).

*Steven B. Kaplan*, for the appellees (named defendant et al.).

PETERS, J. This is a case about unpaid employees of a subcontractor working on a public works project. It presents the question of whether the commissioner of labor, who has the authority to collect unpaid wages on behalf of employees pursuant to General Statutes § 31-72 (wage collection statute), is permitted to sue the general contractor and its surety to enforce payment on a labor and materials bond pursuant to General Statutes §§ 49-41 (public works statute) and 49-42 (bond enforcement statute). The trial court answered this question in the negative. We disagree and, accordingly, reverse the judgment of the trial court in part.

This appeal arises out of an action commenced by the plaintiff, the commissioner of labor (commissioner), on December 18, 1998, to collect unpaid prevailing and overtime wages[1] that were owed to eighty employees of Big Bell Development Corporation (subcontractor). They had performed work on a public works project for removal of asbestos from certain Hartford public schools. The commissioner sought recovery from the general contractor, C.J.M. Services, Inc. (general contractor), and from the Insurance Company of the State of Pennsylvania (ICSP) on the payment bond for the project.

In his amended complaint,[2] the commissioner alleged, inter alia: (1) ICSP was liable, as surety on the payment

---

[1] The total amount of unpaid wages was $160,974.12.

[2] The plaintiff filed the original complaint on June 15, 1998, but subsequently withdrew several counts in that complaint. The original complaint is not at issue in this appeal.

bond, for the payment of labor performed on the project (count one); (2) the general contractor was liable, as a matter of statutory law, as an "employer," as defined in General Statutes § 31-71a (1),[3] for payment of wages under General Statutes §§ 31-53[4] (prevailing wage stat-

[3] General Statutes § 31-71a provides in relevant part: "Whenever used in sections 31-71a to 31-71i, inclusive: (1) 'Employer' includes any individual, partnership, association, joint stock company, trust, corporation, the administrator or executor of the estate of a deceased person, the conservator of the estate of an incompetent, or the receiver, trustee, successor or assignee of any of the same, employing any person, including the state and any political subdivision thereof . . . ."

[4] General Statutes § 31-53 provides in relevant part: "(a) Each contract for . . . any public works project by the state . . . or by any political subdivision of the state . . . shall contain the following provision: 'The wages paid on an hourly basis to any mechanic, laborer or workman employed upon the work herein contracted to be done and the amount of payment or contribution paid or payable on behalf of each such employee to any employee welfare fund . . . shall be at a rate equal to the rate customary or prevailing for the same work in the same trade or occupation in the town in which such public works project is being constructed. Any contractor who is not obligated by agreement to make payment or contribution on behalf of such employees to any such employee welfare fund shall pay to each employee as part of his wages the amount of payment or contribution for his classification on each pay day.'

"(b) Any person who knowingly or wilfully employs any mechanic, laborer or workman in . . . any public works project . . . [and] who fails to pay the amount of payment or contributions paid or payable on behalf of each such employee to any employee welfare fund, or in lieu thereof to the employee . . . shall be fined not less than two thousand five hundred dollars but not more than five thousand dollars for each offense and (1) for the first violation, shall be disqualified from bidding on contracts with the state or any political subdivision until the contractor or subcontractor has made full restitution of back wages . . . and for an additional six months thereafter and (2) for subsequent violations, shall be disqualified from bidding on contracts with the state or any political subdivision until the contractor or subcontractor has made full restitution of the back wages . . . and for not less than an additional two years thereafter. In addition, if it is found by the contracting officer representing the state or political subdivision thereof that any mechanic, laborer or workman employed by the contractor or any subcontractor directly on the site for the work covered by the contract has been or is being paid a rate of wages less than the rate of wages required . . . the state or contracting political subdivision thereof may (A) . . . terminate such contractor's right to proceed with the work . . . and the contractor and his sureties shall be liable to the state or the contracting political

ute) and 31-76c[5] (overtime wage statute) (count two); and (3) the general contractor, as a matter of contract law, was liable for payment of wages pursuant to its contract for the project (count three). In each count, the commissioner relied on his authority to bring an action pursuant to the wage collection statute.

On July 23, 1999, the trial court granted the defendants'[6] motion to strike each count of the amended complaint.[7] The court did so on two grounds. First, the court concluded that the commissioner had no authority to bring suit, on behalf of a subcontractor's employees, against the general contractor or its bonding company. Second, the court concluded that the general

subdivision for any excess costs . . . or (B) withhold payment of money to the contractor or subcontractor. The contracting department . . . shall . . . notify the Labor Commissioner . . . of the name of the contractor or subcontractor, the project involved, the location of the work, the violations involved, the date the contract was terminated, and steps taken to collect the required wages.

"(c) The Labor Commissioner may make complaint to the proper prosecuting authorities for the violation of any provision of subsection (b). . . .

"(e) The Labor Commissioner shall determine the prevailing rate of wages . . . in each locality where any such public work is being constructed . . . . Upon award of any contract subject to the provisions of this section, the contractor to whom the contract is awarded shall certify, under oath, to the Labor Commissioner the pay scale to be used by such contractor and any of his subcontractors for work to be performed under such contract."

[5] General Statutes § 31-76c provides: "No employer, except as otherwise provided herein, shall employ any of his employees for a workweek longer than forty hours, unless such employee receives remuneration for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

[6] Our reference to the defendants in this opinion includes the general contractor and ICSP. Although the subcontractor was also a defendant named in the plaintiff's complaints, the motions to strike that are at issue in this appeal were filed only by the general contractor and ICSP. The subcontractor is not a party to this appeal.

[7] In their motion, the defendants also moved to strike count ten, which alleged that the general contractor was an "employer," as statutorily defined, and remained liable for previously assessed civil penalties for violations of the prevailing and overtime wage statutes. Because the court denied the defendants' motion to strike that count, it is not a part of this appeal.

contractor was not an "employer" as statutorily defined and, therefore, was not liable as alleged by the commissioner. Because the general contractor was not liable, its surety, ICSP, also was not liable.

On September 7, 1999, without waiving his appellate rights to challenge the court's striking of the counts in the earlier complaint, the commissioner filed a second amended complaint. In that complaint, count one (amended count one) was brought against only the general contractor and alleged that, as was previously alleged against ICSP, the general contractor was liable pursuant to the payment bond. It also alleged that the general contractor was an "employer" as statutorily defined. On January 31, 2000, the court granted the general contractor's motion to strike amended count one.[8]

On appeal to this court, the commissioner claims that each of the stricken counts was legally sufficient to survive the defendants' motions to strike. Specifically, he argues that: (1) he has authority under the wage collection statute to collect unpaid wages on behalf of the subcontractor's employees; (2) ICSP, as a surety on the labor and materials bond, is liable for payment of wages to the subcontractor's employees; (3) the general contractor is liable for payment of wages to the subcontractor's employees;[9] (4) there were disputed factual

[8] On May 23, 2000, on the plaintiff's motion, the court rendered partial judgment in favor of both defendants on the counts that the court had stricken. Two years later, after judgment for default had entered against the subcontractor on other counts, the court issued a memorandum of decision allowing the partial judgment of May 23, 2000 to enter.

With regard to the subcontractor, the court rendered judgment against it as to counts four and five of the second amended complaint. Those counts alleged that the subcontractor was an employer, as statutorily defined, and was liable for the wages due to the employees who worked on the public works project, double damages, a reasonable attorney's fee, costs and interest.

[9] The plaintiff argues that the general contractor was liable under three theories of liability: (1) pursuant to the payment bond, (2) pursuant to the prevailing wage statute and (3) pursuant to its contract for the project.

issues about the general contractor's alleged liability as a de facto direct employer of the subcontractor's employees; and (5) the amended prayer for relief, which included a request for injunctive relief, made all the stricken counts legally sufficient to withstand a motion to strike.

The standard applicable to our review of a trial court's granting of a motion to strike is well established. "A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. As a result, our review of the court's ruling is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) *Vacco* v. *Microsoft Corp.*, 260 Conn. 59, 64–65, 793 A.2d 1048 (2002); *Jewish Home for the Elderly of Fairfield County, Inc.* v. *Cantore*, 257 Conn. 531, 537–38, 778 A.2d 93 (2001); *Donar* v. *King Associates, Inc.*, 67 Conn. App. 346, 349, 786 A.2d 1256 (2001).

Due to the multiplicity of counts and allegations in this case, we will start with a road map to the discussion to follow. Each of the stricken counts alleges a different theory of liability and a different basis for the commissioner's authority to bring suit. The legal sufficiency of each count must therefore be addressed separately. With respect to count one, we will address jointly the liability of the surety and the general contractor both as originally pleaded and as amended. Thereafter, we will address the merits of counts two and three. Finally, we will address the merits of the commissioner's claim for equitable relief as stated in the amended complaint.

I

## COUNT ONE AND AMENDED COUNT ONE

Count one and amended count one alleged, respectively, that ICSP and the general contractor were liable to the subcontractor's employees pursuant to the payment bond secured for the public works project.[10] The commissioner claims that the allegations contained in these counts were legally sufficient to withstand a motion to strike. We agree.

A

### Commissioner as Claimant under Count One

Because it is a jurisdictional issue, we first address whether the commissioner has the authority to enforce

[10] In its memorandum of decision related to the plaintiff's amended complaint, the trial court characterized count one as asserting a claim "against [the general contractor] and ICSP under [the prevailing wage statute] and the provisions of the contract." We do not read the allegations so narrowly. Count one also alleges liability pursuant to the payment bond.

Count one provides in relevant part:

"1. The Plaintiff . . . is the Commissioner of Labor acting pursuant to *statutory authority under [the wage collection statute], wherein he is author*ized to collect any and all unpaid wages.

"2. The Defendant, [general contractor], is the principal on a Labor and Materials Bond for a public works contract project . . . .

"3. The Defendant, [ICSP], is the surety on the Labor and Materials Bond for said public works project . . . .

"4. Said Defendants are jointly and severally liable for the payment of labor on the aforementioned project at the prevailing rate of pay owed pursuant to [the prevailing wage statute] and pursuant to said contract.

"5. The Defendant ICSP is liable for the payment of labor performed on the above-mentioned project pursuant to the Bond described in Paragraph 3 hereinabove.

"6. On December 31, 1997, Plaintiff sent written notice of claim on the Bond by Certified Mail to ICSP and [the general contractor] pursuant to [the bond enforcement statute] for the payment of prevailing wages and overtime on said wages due in the following amounts to the following employees of [the general contractor's] subcontractor . . . ."

Amended count one subsequently added the following allegations:

"2. The Defendant, [general contractor], at all times relevant to this Complaint was an employer in Connecticut [as statutorily defined] . . . .

"3. The Defendant, [general contractor], was the principal on a Labor and

payment on the bond. The trial court concluded that he did not. Resolution of the issue requires statutory construction and our review is therefore plenary. *Boynton* v. *New Haven*, 63 Conn. App. 815, 819, 779 A.2d 186, cert. denied, 258 Conn. 905, 782 A.2d 136 (2001).

The commissioner's claim is entirely statutory. His right to sue depends upon three remedial statutes that intersect under the circumstances of this case. These are the wage collection statute, § 31-72, the public works statute, § 49-41, and the bond enforcement statute, § 49-42. Each of them was designed to help unpaid employees to be made whole. As remedial statutes, each of them must be construed broadly in favor of employees whom the legislature intended to benefit. See *Mytych* v. *May Dept. Stores Co.*, 260 Conn. 152, 160–61, 793 A.2d 1068 (2002); *Butler* v. *Hartford Technical Institute, Inc.*, 243 Conn. 454, 463, 704 A.2d 222 (1997); *Tianti* v. *William Raveis Real Estate, Inc.*, 231 Conn. 690, 696, 651 A.2d 1286 (1995).

The principles of statutory construction by which this court is guided are well settled. "Our fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Citations omitted; internal quotation marks omitted.) *State* v. *Metz*, 230 Conn. 400, 409, 645 A.2d 965 (1994); *Coregis Ins. Co.* v. *Fleet National Bank*, 68 Conn. App. 716, 720, 793 A.2d 254 (2002).

Materials Bond for a public works contract project . . . .

"4. The Defendant, [general contractor], is liable for the payment of labor performed on the above-mentioned project pursuant to the Bond described in Paragraph 3 hereinabove . . . ."

The legislative history of these statutes confirms their remedial purpose. With respect to the wage collection statute, our legislature has stated clearly that its purpose is to protect employees. See 32 S. Proc., Pt. 6, 1989 Sess., p. 1925, remarks of Senator James H. Maloney (stating that amendment to § 31-72 was "a bill in support of our working men and women in the State of Connecticut"). Since its inception, the legislature has amended this statute to increase the power of the commissioner to initiate the collection of unpaid wages. In 1989, our General Assembly eliminated the requirement that each employee assign his or her claim to unpaid wages to the commissioner. See 32 H.R. Proc., Pt. 15, 1989 Sess., pp. 5200–5204, remarks of Representative Joseph A. Adamo; 32 S. Proc., supra, pp. 1924–25. That amendment, in effect, empowered the commissioner to proceed with the collection of unpaid wages absent assignment from employees. See 32 S. Proc., supra, p. 1925.

The public works statute and the bond enforcement statute were modeled after remedial federal legislation known as the Miller Act. See 40 U.S.C. §§ 270a through 270d. Our courts have often relied on federal interpretations of the Miller Act for guidance as to the scope of our own legislation. *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, 239 Conn. 708, 716, 687 A.2d 506 (1997); *American Masons' Supply Co.* v. *F.W. Brown Co.*, 174 Conn. 219, 223–24, 384 A.2d 378 (1978). Federal courts construe the statutory requirements of the Miller Act broadly. The United States Supreme Court has stated that the federal Miller Act is "highly remedial in nature . . . [and] entitled to a liberal construction and application in order properly to effectuate the [legislative] intent to protect those whose labor and materials go into public projects." *Clifford F. MacEvoy Co.* v. *United States*, 322 U.S. 102, 107, 64 S. Ct. 890, 88 L. Ed. 1163 (1944).

Bearing in mind the dictates of the principle of broad construction, we turn to an examination of our own statutes for the protection of employees. The wage collection statute, § 31-72,[11] authorizes the commissioner of labor to bring a civil action to recover twice the amount of wages due and empowers him to take "any legal action necessary" to recover unpaid wages on behalf of employees. The public works statute, § 49-41, requires general contractors on public works projects to obtain a bond to ensure payment to all employees working on the projects.[12] The bond enforcement stat-

[11] General Statutes § 31-72 provides: "When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, or fails to compensate an employee in accordance with section 31-76k or where an employee or a labor organization representing an employee institutes an action to enforce an arbitration award which requires an employer to make an employee whole or to make payments to an employee welfare fund, such employee or labor organization may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, and any agreement between him and his employer for payment of wages other than as specified in said sections shall be no defense to such action.

"The Labor Commissioner may collect the full amount of any such unpaid wages, payments due to an employee welfare fund or such arbitration award, as well as interest calculated in accordance with the provisions of section 31-265 from the date the wages or payment should have been received, had payment been made in a timely manner. In addition, the Labor Commissioner may bring any legal action necessary to recover twice the full amount of unpaid wages, payments due to an employee welfare fund or arbitration award, and the employer shall be required to pay the costs and such reasonable attorney's fees as may be allowed by the court. The commissioner shall distribute any wages, arbitration awards or payments due to an employee welfare fund collected pursuant to this section to the appropriate person."

[12] General Statutes § 49-41 provides: "(a) Each contract exceeding fifty thousand dollars in amount for the construction, alteration or repair of any public building or public work of the state or of any subdivision thereof shall include a provision that the person to perform the contract shall furnish to the state or the subdivision on or before the award date, a bond in the amount of the contract which shall be binding upon the award of the contract to that person, with a surety or sureties satisfactory to the officer awarding the contract, for the protection of persons supplying labor or materials in the prosecution of the work provided for in the contract for the use of each such person, provided no such bond shall be required to be furnished (1) in relation to any general bid in which the total estimated cost of labor and

50

ute, § 49-42,[13] authorizes employees on a public works

materials under the contract with respect to which such general bid is submitted is less than fifty thousand dollars, (2) in relation to any sub-bid in which the total estimated cost of labor and materials under the contract with respect to which such sub-bid is submitted is less than fifty thousand dollars, or (3) in relation to any general bid or sub-bid submitted by a consultant, as defined in section 4b-55. Any such bond furnished shall have as principal the name of the person awarded the contract.

"(b) Nothing in this section or sections 49-41a to 49-43, inclusive, shall be construed to limit the authority of any contracting officer to require a performance bond or other security in addition to the bond herein referred to, except that no such officer shall require a performance bond in relation to any general bid in which the total estimated cost of labor and materials under the contract with respect to which such general bid is submitted is less than twenty-five thousand dollars or in relation to any sub-bid in which the total estimated cost of labor and materials under the contract with respect to which such sub-bid is submitted is less than fifty thousand dollars."

[13] General Statutes § 49-42 provides in relevant part: "(a) Any person who performed work or supplied materials for which a requisition was submitted to, or for which an estimate was prepared by, the awarding authority and who does not receive full payment for such work or materials within sixty days of the applicable payment date provided for in subsection (a) of section 49-41a, or any person who supplied materials or performed subcontracting work not included on a requisition or estimate who has not received full payment for such materials or work within sixty days after the date such materials were supplied or such work was performed, may enforce his right to payment under the bond by serving a notice of claim on the surety that issued the bond and a copy of such notice to the contractor named as principal in the bond within one hundred eighty days of the applicable payment date provided for in subsection (a) of section 49-41a, or, in the case of a person supplying materials or performing subcontracting work not included on a requisition or estimate, within one hundred eighty days after the date such materials were supplied or such work was performed. The notice of claim shall state with substantial accuracy the amount claimed and the name of the party for whom the work was performed or to whom the materials were supplied, and shall provide a detailed description of the bonded project for which the work or materials were provided. If the content of a notice prepared in accordance with subsection (b) of section 49-41a complies with the requirements of this section, a copy of such notice, served within one hundred eighty days of the payment date provided for in subsection (a) of section 49-41a upon the surety that issued the bond and upon the contractor named as principal in the bond, shall satisfy the notice requirements of this section. Within ninety days after service of the notice of claim, the surety shall make payment under the bond and satisfy the claim, or any portion of the claim which is not subject to a good faith dispute, and shall serve a notice on the claimant denying liability for any unpaid portion of the

project to bring suit on a payment bond to collect unpaid wages. Our Supreme Court has observed that the bond related statutes were enacted for the protection of employees and material suppliers who cannot avail themselves of otherwise available remedies, such as liens. *Blakeslee Arpaia Chapman, Inc.* v. *EI Construc-*

claim. The notices required under this section shall be served by registered or certified mail, postage prepaid in envelopes addressed to any office at which the surety, principal or claimant conducts his business, or in any manner in which civil process may be served. If the surety denies liability on the claim, or any portion thereof, the claimant may bring action upon the payment bond in the Superior Court for such sums and prosecute the action to final execution and judgment. An action to recover on a payment bond under this section shall be privileged with respect to assignment for trial. The court shall not consolidate for trial any action brought under this section with any other action brought on the same bond unless the court finds that a substantial portion of the evidence to be adduced, other than the fact that the claims sought to be consolidated arise under the same general contract, is common to such actions and that consolidation will not result in excessive delays to any claimant whose action was instituted at a time significantly prior to the motion to consolidate. In any such proceeding, the court judgment shall award the prevailing party the costs for bringing such proceeding and allow interest at the rate of interest specified in the labor or materials contract under which the claim arises or, if no such interest rate is specified, at the rate of interest as provided in section 37-3a upon the amount recovered, computed from the date of service of the notice of claim, provided, for any portion of the claim which the court finds was due and payable after the date of service of the notice of claim, such interest shall be computed from the date such portion became due and payable. The court judgment may award reasonable attorneys fees to either party if upon reviewing the entire record, it appears that either the original claim, the surety's denial of liability, or the defense interposed to the claim is without substantial basis in fact or law. Any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing the payment bond shall have a right of action upon the payment bond upon giving written notice of claim as provided in this section.

"(b) Every suit instituted under this section shall be brought in the name of the person suing, in the superior court for the judicial district where the contract was to be performed, irrespective of the amount in controversy in the suit, but no such suit may be commenced after the expiration of one year after the applicable payment date provided for in subsection (a) of section 49-41a, or, in the case of a person supplying materials or performing subcontracting work not included on a requisition or estimate, no such suit may be commenced after the expiration of one year after the date such materials were supplied or such work was performed. . . ."

*tors, Inc.*, supra, 239 Conn. 714; *Herbert S. Newman & Partners, P.C.* v. *CFC Construction Ltd. Partnership*, 236 Conn. 750, 757, 674 A.2d 1313 (1996); *KMK Insulation, Inc.* v. *A. Prete & Son Construction Co.*, 49 Conn. App. 522, 527, 715 A.2d 799 (1998).

It is undisputed that the subcontractor's employees themselves would have been entitled to enforce payment on the bond against both the general contractor, as principal, and ICSP, as surety on the bond.[14] See, e.g., *American Masons' Supply Co.* v. *F. W. Brown Co.*, supra, 174 Conn. 226–27 (holding that persons supplying labor or materials to a subcontractor on a public works project may seek reimbursement under a statutory payment bond provided by the general contractor). The question before us is whether the commissioner has statutory authority to bring such an action on their behalf. This is an issue of first impression.

Textually, the wage collection statute provides that "[w]hen any employer fails to pay an employee wages . . . [t]he Labor Commissioner may collect the full amount of any such unpaid wages . . . as well as interest. . . . In addition, the Labor Commissioner may bring *any legal action necessary* to recover twice the full amount of unpaid wages . . . ." (Emphasis added.) General Statutes § 31-72. All of the parties maintain that the literal language of the statute supports their respective positions.

The commissioner construes the language allowing the commissioner to pursue "any legal action neces-

---

[14] The defendants conceded this point at oral argument before this court.

The scope of the federal Miller Act, upon which our legislation is based, provides further support for this interpretation. In *J. W. Bateson Co.* v. *United States*, 434 U.S. 586, 98 S. Ct. 873, 55 L. Ed. 2d 50 (1978), the United States Supreme Court refused to extend Miller Act protection to a sub-subcontractor's employees on the basis that they lacked a contractual relationship with the general contractor or subcontractor. It is, therefore, implied that employees of subcontractors are protected by the Miller Act. 4 S. Stein, Construction Law (2001) § 17.02 [3] [c], p. 17-20.

sary" as a broad grant of authority that necessarily includes the enforcement of a payment bond pursuant to the bond enforcement statute. The defendants argue, however, that the commissioner's authority under the wage collection statute is limited to initiating civil actions against the direct employer of the unpaid employees. We agree with the commissioner.

The defendants emphasize that the wage collection statute commences with the language, "[w]hen any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i . . ." and further states that "the employer shall be required to pay the costs and such reasonable attorney's fees as may be allowed by the court. . . ." General Statutes § 31-72. At best, the opening phrase is ambiguous. "Any" may denote breadth rather than limitation. The reference to "an employee" may well reflect a deliberate choice not to use "its employee."

We are persuaded that a broader construction of the statutory language is appropriate. Ambiguities in a remedial statute must be resolved in favor of the persons whom the statute is intended to protect. The statute as a whole is more coherent if the dispute about the meaning of the disputed language is resolved in favor of the commissioner. See *State* v. *Anonymous*, 237 Conn. 501, 514–15, 680 A.2d 956 (1996). In light of this interpretation, the further statutory reference to the liability of "the employer" for costs and attorney's fees, in our view, does not limit the scope of "any employer." Furthermore, even if we were to interpret the opening phrase to refer to situations in which an employer has failed to pay its direct employee, we are not persuaded that that phrase restricts the latter part of the section that grants authority to the commissioner to bring "any legal action necessary."

The defendants' argument for a narrower construction of the wage collection statute is unavailing because

it is unsupported by applicable legal authorities. It is true that other cases in which the commissioner has initiated legal action pursuant to the wage collection statute have involved civil actions brought against employers for unpaid wages for which the employers were directly liable. See, e.g., *Butler* v. *Hartford Technical Institute, Inc.*, supra, 243 Conn. 454; *Tianti* v. *William Raveis Real Estate, Inc.*, supra, 231 Conn. 690; *Petronella* v. *Venture Partners, Ltd.*, 60 Conn. App. 205, 758 A.2d 869 (2000), appeal dismissed, 258 Conn. 453, 782 A.2d 97 (2001). These cases, however, concerned employees on private worksites. We see no reason to draw a negative inference from their holdings. They do not govern the enforcement of a payment bond on a public works project pursuant to a remedial statute.

We therefore construe the wage collection statute to empower the commissioner to initiate any necessary legal action. In our view, this construction is consistent with the purpose that our legislature intended to implement.

Even if the defendants' construction of the text of the wage collection statute is not persuasive, they question the propriety of any reliance on the public works and bond enforcement statutes, §§ 49-41 and 49-42. They claim that our Supreme Court, in *Dysart Corp.* v. *Seaboard Surety Co.*, 240 Conn. 10, 688 A.2d 306 (1997), held that these statutes do not apply to the employees of a subcontractor. We disagree with this interpretation of *Dysart*.

In *Dysart*, our Supreme Court disallowed a claim by an endorsee of the wage checks of the employees of a subcontractor. The court did so, however, not on general principles, but on the ground that the claimant failed to prove an assignment of the employees' rights to payment. The court expressly declined to consider

whether assignees, as a class, were disqualified from enforcing payment on a bond. Id., 16.[15]

*Dysart* recognized "the need of every general contractor to protect itself against excessively remote and, from its perspective, undetermined claims." Id., 19. In this case, unlike the third party claimant in *Dysart*, the commissioner initiated the present action on behalf of the subcontractor's employees, rather than on his own behalf. A case brought on behalf of persons who fall within the scope of statutory protection is not a case in which a claim for relief is "excessively remote" or "undetermined." *Dysart* does not govern this case.

Finally, we consider the combined guidance that all three statutes provide for determining the commissioner's authority to proceed with his cause of action. "Because the legislature is always presumed to have created a harmonious and consistent body of law, the proper construction of any statute must take into account the mandates of related statutes governing the same general subject matter." (Internal quotation marks omitted.) *Common Fund* v. *Fairfield*, 228 Conn. 375, 381, 636 A.2d 795 (1994); *Felia* v. *Westport*, 214 Conn. 181, 187, 571 A.2d 89 (1990).

We are persuaded that the statutory scheme created by our legislature was intended to ensure that employees on public works projects are paid the wages to which they are entitled. To limit the commissioner to a direct claim against the subcontractor would be inconsistent with the requirement that a payment bond be posted for the protection of these employees. Indeed, it is only realistic to recognize that individual unpaid

---

[15] The court in *Dysart* did note, however, that the United States Supreme Court has held that the scope of protection under the federal Miller Act, upon which our own statutes are based, includes "an assignee of the claims of persons furnishing labor or materials on a bonded project . . . even if the assignee itself did not furnish labor or materials." *Dysart Corp.* v. *Seaboard Surety Co.*, supra, 240 Conn. 16.

employees may not have the wherewithal, or the legal assistance, to bring effective recovery actions on their own behalf.

In conclusion, we find persuasive the commissioner's argument that the plain language of the wage collection statute permitting the commissioner to bring "any legal action necessary," and the legislative intent that remedial statutes relating to public works projects be construed broadly, sustain his authority to proceed. The commissioner was a proper claimant to enforce payment on the bond on behalf of the subcontractor's employees.

The trial court's ruling on the defendants' motion to strike was not limited to a determination of the commissioner's authority to bring a cause of action. The court also determined that the commissioner had alleged no substantive basis for imposing liability on any of the named defendants. We now turn, therefore, to the questions of liability.

B

Liability of ICSP under Count One

Count one alleges that ICSP, as surety, was liable pursuant to the payment bond that it had issued with respect to the asbestos removal project. The commissioner argues that ICSP is liable to the subcontractor's employees for payment of wages pursuant to the public works statute and the bond enforcement statute. We agree.

In its memorandum of decision, the trial court characterized count one as asserting a claim only under "[the prevailing wage statute] and the provisions of the contract." The court reasoned that because the general contractor was not the "employer" of the subcontractor's employees, the general contractor could not be held liable as alleged. The commissioner did not appeal

from the court's ruling in favor of the general contractor, but rather amended count one as to that defendant in his second amended complaint. We address those allegations as modified in part I C of this opinion.

The court failed to acknowledge that count one also alleged liability of ICSP pursuant to the payment bond. Paragraph five of count one expressly states that "[t]he Defendant ICSP is liable for the payment of labor performed on the above-mentioned project pursuant to the Bond . . . ." Paragraph six then states that written notice was sent to the defendants pursuant to the bond enforcement statute. We therefore consider the legal sufficiency of the commissioner's claim against ICSP under the payment bond.

The language of the public works statute and the bond enforcement statute establishes the liability of a surety on a bond. First, the public works statute requires that all such projects be bonded in the amount of the contract and that the surety or sureties on the bond must be approved by the officer awarding the contract. Second, the bond enforcement statute sets out a procedure that requires a claimant to serve notice of claim on both the principal and the surety that issued the bond. General Statutes § 49-42. Once notice has been properly served, if the surety refuses to pay, then the claimant may bring an action on the payment bond in the Superior Court. Id.

Our Supreme Court repeatedly has recognized the liability of a surety pursuant to a payment bond under the public works statute and the bond enforcement statute.[16] See *Blakeslee Arpaia Chapman, Inc.* v. *EI*

---

[16] This is consistent with the liability of a surety on a payment bond under the federal Miller Act. "Once it is established that a claim covered by a payment bond is in fact due and owing . . . and the prime contractor has not paid the claim (or the subcontractor on a second tier claim), the surety must pay the claim." 3 S. Stein, Construction Law (2001) § 17.02 [10] [b], p. 17-43.

*Constructors, Inc.*, supra, 239 Conn. 714–17; *American Masons' Supply Co.* v. *F. W. Brown Co.*, supra, 174 Conn. 220–21. In *Blakeslee Arpaia Chapman, Inc.*, the court specifically stated that coverage of a payment bond by a surety could not fall below the statutory requirements. Furthermore, the court stated that "if there is any ambiguity, it must be interpreted most strongly against [the surety]." (Internal quotation marks omitted.) *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, supra, 717.

Count one alleged that ICSP was the surety on the payment bond for the public works project. The bond, a copy of which was attached to the complaint, specifically stated that it was "executed pursuant to the provisions of: [public works statute]. . . [bond enforcement statute] . . . and the rights and liabilities hereunder shall be determined and limited by said sections . . . ." Count one further alleged that ICSP was liable "pursuant to the Bond," that employees of a subcontractor had not been paid, that written notice of claim had been sent to ICSP pursuant to the bond enforcement statute, and that "both the principal and the surety [had] refused and/or neglected to tender payment."

We conclude that the claim against ICSP, as surety on the payment bond, was legally sufficient. The commissioner had a right to seek payment for the employees of the subcontractor from ICSP. The court's ruling to the contrary was improper.

C

Liability of General Contractor under Count One

Amended count one alleged that the general contractor was liable pursuant to the payment bond.[17] The

---

[17] The trial court stated on its order granting the defendants' motion to strike that "[s]imply amending the first count to allege that [the general contractor] was an employer, does not, in view of the definition and reasoning in the court's memorandum of decision dated July 23, 1999, make this count sufficient . . . ." The court's statement fails to acknowledge that

commissioner claims that this claim, too, was legally sufficient. We agree.

Amended count one alleged that the general contractor was the principal on the payment bond for the public works project for asbestos removal. It then alleged that the general contractor was liable for the payment of labor performed on that project pursuant to the bond. As previously noted, the bond, a copy of which was attached to the complaint, was executed pursuant to the public works statute and the bond enforcement statute. Amended count one further stated that wages were due to employees of the subcontractor, that the commissioner, on behalf of the subcontractor's employees, served the general contractor with notice of the claim pursuant to the bond enforcement statute and that the general contractor had refused or neglected to tender payment on its bond to the subcontractor's employees or to the commissioner.

As with the liability of ICSP, the general contractor's liability as principal on the bond is established by the language of the public works statute and the bond enforcement statute. The public works statute expressly states that the bond "shall have as principal the name of the person awarded the contract." General Statutes § 49-41 (a). The procedure for enforcement set out in the bond enforcement statute includes the principal on the bond, as well as the surety. A claimant must first serve notice of the claim on both the surety that issued the bond *and* the general contractor named as principal on the bond. General Statutes § 49-42 (a). If the surety refuses to pay, then the claimant may bring an action on the payment bond in the Superior Court. Id.

Our Supreme Court has recognized a general contractor's liability as principal on a payment bond to those supplying labor or materials to a subcontractor. In *American Masons' Supply Co.* v. *F.W. Brown Co.*,

---

amended count one also alleged the general contractor's liability pursuant to the bond.

supra, 174 Conn. 226–27, the court held that a plaintiff, who had supplied materials used by a subcontractor on a public works project, had a right of action under the bond enforcement statute against the general contractor as principal on the bond. The court reasoned that, as long as the entity to whom the plaintiff had supplied materials was a subcontractor, the plaintiff's relationship to the project was not too remote to bring a claim against the prime contractor and its surety. Id.

In the present case, it is undisputed that the entity for whom the employees supplied labor was a subcontractor. With respect to their relationship to the general contractors, we see no substantive distinction between the material suppliers in *American Masons' Supply Co.* and the subcontractor's employees here. The subcontractor's employees were not too remote for the general contractor to be liable for payment of their wages pursuant to the bond enforcement statute.

The defendants argue, nonetheless, that the general contractor cannot be held liable for the unpaid wages of a subcontractor's employees because the general contractor was not their direct employer. They note that the commissioner's complaint does not allege that the general contractor was the "employer" of the subcontractor's employees.

The defendants rely on *Butler* v. *Hartford Technical Institute, Inc.*, supra, 243 Conn. 463, and *Tianti* v. *William Raveis Real Estate, Inc.*, supra, 231 Conn. 696,[18] for the proposition that the term "employer," even in the context of a remedial statute, is limited to a person "who possesses the ultimate authority and control . . . to set the hours of employment and pay wages . . . ." *Butler* v. *Hartford Technical Institute, Inc.*, supra, 462.

[18] *Tianti* is irrelevant because it concerned the distinction between an employee and an independent contractor. See *Tianti* v. *William Raveis Real Estate, Inc.*, supra, 231 Conn. 694.

*Butler* is distinguishable for several reasons. First, the Supreme Court's opinion was designed to avoid an unduly narrow interpretation of § 31-72. Id., 462–63. Its decision imposed liability for unpaid wages not only on a corporate *employer* but also on a high ranking corporate *employee.* Second, the court's discussion of personal liability arose in a context other than liability under a payment bond. The court's decision is, therefore, not relevant under the circumstances of this case.

We are persuaded that a claimant seeking recovery from a general contractor on a payment bond need not show a direct employer-employee relationship between the employee and the general contractor. None of the cases in which our Supreme Court held that a general contractor, or its surety, was liable pursuant to a payment bond required a showing of an employee-employer relationship.[19] See *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, supra, 239 Conn. 708; *American Masons' Supply Co.* v. *F.W. Brown Co.*, supra, 174 Conn. 226–27.

We conclude that a general contractor can be held liable, as principal on a payment bond for a public works contract, to a subcontractor's employees. We are, therefore, persuaded that the commissioner's allegations against the general contractor in amended count one were legally sufficient to survive a motion to strike.

## II

## COUNT TWO

Count two of the commissioner's complaint alleged that the general contractor, as an employer in Connecticut and as general contractor on the asbestos removal project, was liable to the subcontractor's employees

---

[19] In light of this conclusion, we need not address the plaintiff's claim that it was deprived of the opportunity to prove that the general contractor was a de facto direct employer of the subcontractor's employees.

for payment of wages pursuant to the prevailing wage statute, § 31-53.[20] The prevailing wage statute requires all employees on a public works project to be paid prevailing wages, as determined by the commissioner of labor, and sets out penalties for any person who knowingly violates that requirement.[21] The commissioner argues that the court improperly struck this count on the theory that the statutory requirement that employees be paid prevailing wages imposes liability on the general contractor for payment of those wages. The defendants claim, however, that the only remedies under the prevailing wage statute are those expressly set out in the statute. We agree with the defendants.

Although the prevailing wage statute specifically authorizes an action by the commissioner, the statute provides only limited remedies. It does not authorize the recovery of unpaid wages. Rather, it sets out the following specific sanctions: a monetary fine; a period of disqualification from further bidding on public contracts; the termination of a contract before the completion of the project and the withholding of payment to the contractor or subcontractor. On its face, the statute does not give the commissioner the relief that he seeks.

---

[20] See footnote 4.

[21] The commissioner also invokes the overtime wage statute, § 31-76c. We do not consider, however, the legal sufficiency of the allegations in count two that relate to overtime wages. In its brief, the commissioner's argument in support of the legal sufficiency of count two focuses solely on the prevailing wage statute, § 31-53, and the commissioner's authority to enforce the payment of such prevailing wages. Neither the prevailing wage statute, nor its enforcement statute, § 31-53a, includes overtime wages. *Electrical Contractors, Inc.* v. *Tianti*, 223 Conn. 573, 583–84, 613 A.2d 281 (1992). The plaintiff's brief provides no support for the legal sufficiency of its allegations pursuant to the overtime wage statute and we, therefore, deem that claim abandoned. See *Bridgeport Hospital* v. *Commission on Human Rights & Opportunities*, 232 Conn. 91, 115, 653 A.2d 782 (1995) ("[w]here an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived").

In his brief, the commissioner's only reference to enforcement of the overtime wage statute is in the context of the amended prayer for relief. We address that claim in part IV.

The commissioner argues, nonetheless, that § 31-53a (b) provides a remedy because it states that employees "shall have the right of action and of intervention against the contractor and his sureties" for unpaid wages.[22] This argument is unavailing for two reasons. First, the commissioner made no reference to § 31-53a in count two of his complaint and therefore cannot now rely on that section to support the legal sufficiency of his pleading. See *Ferreira* v. *Pringle*, 255 Conn. 330, 337-38, 766 A.2d 400 (2001). Second, even if we were to consider the prevailing wage statute, § 31-53, to encompass § 31-53a, the commissioner could not prevail. An action under § 31-53a (b) is triggered by the termination of a contract pursuant to subsection (b) of the prevailing wage statute and provides recovery for employee underpayments associated with the termination. That is not the case here.

As previously noted, the trial court did not strike count ten of the complaint, which alleged that the general contractor was independently liable under the prevailing wage statute.[23] In that count, the commissioner alleged that the general contractor was an "employer" as statutorily defined and requested the enforcement of previously assessed civil penalties pursuant to the prevailing wage statute. Unlike count two, count ten sought to enforce the sanctions specifically set out in the statute.

Even remedial statutes are not limitless. We agree with the trial court that the allegations contained in

---

[22] General Statutes § 31-53a (b) provides in relevant part: "If the accrued payments withheld under the terms of a contract terminated pursuant to subsection (b) of section 31-53 are insufficient to reimburse all the mechanics, laborers and workmen with respect to whom there has been a failure to pay the wages required pursuant to said section 31-53, such mechanics, laborers and workmen shall have a right of action and of intervention against the contractor and his sureties conferred by law upon persons furnishing labor or materials . . . ."

[23] See footnote 7.

count two were not legally sufficient to survive a motion to strike.

## III

## COUNT THREE

Count three of the commissioner's complaint alleged that the general contractor had contractual liability for the payment of wages to employees of the subcontractor. The commissioner argues that the trial court improperly failed to accept as true the commissioner's allegation that the general contractor had a contractual obligation. The commissioner maintains that that allegation was legally sufficient to withstand a motion to strike. We disagree.

The trial court stated in its memorandum that "[n]othing has been pointed to in the general contract specifically creating such liability on the general contractor." In count three, the commissioner alleged only that "[the general contractor] was required to pay prevailing wages to all mechanics, laborers, and workmen on said project pursuant to the contract for said public works projects . . . ." The court accurately noted that the commissioner provided no support for this assertion. The commissioner failed to elaborate, in any way, on the parties, the terms or the specific provisions of that contract.

Although a trial court, in ruling on a motion to strike, must take as true all facts alleged; *Vacco* v. *Microsoft Corp.*, supra, 260 Conn. 65; the commissioner must still plead sufficient facts that, if proven, would support his legal claim. *Donar* v. *King Associates, Inc.*, supra, 67 Conn. App. 349–50. A bald assertion that the defendant has a contractual obligation, without more, is insufficient to survive a motion to strike.

## IV

## AMENDED PRAYER FOR RELIEF

The commissioner further claims, on remedial grounds, that the trial court improperly held that each of the stricken counts was legally insufficient. He reminds us that, in his second amended complaint, he sought equitable relief that included a prayer for affirmative injunction to enforce the state wage laws pursuant to General Statutes § 31-2 (d) (enforcement statute).[24] We disagree.

It is dispositive that the amended prayer for relief is relevant only to amended count one. At the time when amended count one was filed, all the other counts had been stricken. These counts were expressly not repleaded in the commissioner's second amended complaint. We have already concluded that amended count one, which alleged the general contractor's liability pursuant to the bond, was legally sufficient to survive a motion to strike. We, therefore, need not address this claim for additional relief.

## V

## CONCLUSION

In sum, we conclude that the commissioner is authorized by the wage collection statute to collect unpaid wages on behalf of a subcontractor's employees and, in the case of a public works project, may do so by enforcing payment on the bond against a general contractor and its surety. We are, therefore, persuaded that the commissioner's allegations in count one and amended count one relevant to enforcement of the pay-

---

[24] General Statutes § 31-2 provides in relevant part: "Powers and duties of commissioner. . . . (d) The commissioner may request the Attorney General to bring an action in Superior Court for injunctive relief requiring compliance with any statute, regulation, order or permit administered, adopted or issued by the commissioner."

ment bond were legally sufficient to survive a motion to strike.

The judgment on the defendants' motion to strike counts two and three of the commissioner's amended complaint is affirmed. The judgment as to count one of the commissioner's amended complaint and count one of the commissioner's second amended complaint is reversed and the case is remanded with direction to deny the defendants' motions to strike those counts.

In this opinion the other judges concurred.