## COMMISSIONER OF LABOR *v.* C.J.M. SERVICES, INC., ET AL.
### (SC 16880)

Sullivan, C. J., and Borden, Katz, Palmer and Vertefeuille, Js.

Argued December 2, 2003—officially released March 23, 2004

*Steven B. Kaplan*, with whom, on the brief, was *Paul R. Fitzgerald*, for the appellants (named defendant et al.).

*Glenn A. Woods*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Judith A. Brown*, assistant attorney general, for the appellee (plaintiff).

*Charles D. Ray* and *Timothy S. Fisher* filed a brief for the Connecticut Construction Industries Association, Inc., as amicus curiae.

*Opinion*

PER CURIAM. This appeal arises from an action by the plaintiff, the commissioner of labor (commissioner),

against the defendants C.J.M. Services, Inc. (general contractor), and Insurance Company of the State of Pennsylvania (ICSP), the general contractor's surety on the bond for a public works project. The commissioner brought an action against the defendants on behalf of the employees of a subcontractor, Big Bell Development Corporation (subcontractor), in order to recover the employees' unpaid prevailing and overtime wages.[1] The trial court granted the defendants' motions to strike all counts of the commissioner's amended and second amended complaints. The Appellate Court reversed the trial court's judgment in part and affirmed it in part. *Commissioner of Labor* v. *C.J.M. Services, Inc.*, 73 Conn. App. 39, 66, 806 A.2d 1105 (2002). We reverse the Appellate Court's judgment in part and affirm it in part.

The opinion of the Appellate Court sets forth the following procedural history. "In his amended complaint, the commissioner alleged, inter alia: (1) ICSP was liable, as surety on the payment bond, for the payment of labor performed on the project (count one); (2) the general contractor was liable, as a matter of statutory law, as an 'employer,' as defined in General Statutes § 31-71a (1),[2] for payment of wages under Gen-

---

[1] The commissioner also named the subcontractor as a defendant in this action and the trial court rendered judgment against the subcontractor in the amount of $161,052.92. In this opinion, we refer to the general contractor and ICSP as the defendants.

[2] General Statutes § 31-71a provides in relevant part: "Whenever used in sections 31-71a to 31-71i, inclusive:

"(1) 'Employer' includes any individual, partnership, association, joint stock company, trust, corporation, the administrator or executor of the estate of a deceased person, the conservator of the estate of an incompetent, or the receiver, trustee, successor or assignee of any of the same, employing any person, including the state and any political subdivision thereof;

"(2) 'Employee' includes any person suffered or permitted to work by an employer . . . ."

eral Statutes §§ 31-53[3] (prevailing wage statute) and 31-

[3] General Statutes § 31-53 provides in relevant part: "(a) Each contract for the construction, remodeling, refinishing, refurbishing, rehabilitation, alteration or repair of any public works project by the state or any of its agents, or by any political subdivision of the state or any of its agents, shall contain the following provision: 'The wages paid on an hourly basis to any mechanic, laborer or workman employed upon the work herein contracted to be done and the amount of payment or contribution paid or payable on behalf of each such employee to any employee welfare fund, as defined in subsection (h) of this section, shall be at a rate equal to the rate customary or prevailing for the same work in the same trade or occupation in the town in which such public works project is being constructed. Any contractor who is not obligated by agreement to make payment or contribution on behalf of such employees to any such employee welfare fund shall pay to each employee as part of his wages the amount of payment or contribution for his classification on each pay day.'

"(b) Any person who knowingly or wilfully employs any mechanic, laborer or workman in the construction, remodeling, refinishing, refurbishing, rehabilitation, alteration or repair of any public works project for or on behalf of the state or any of its agents, or any political subdivision of the state or any of its agents, at a rate of wage on an hourly basis which is less than the rate customary or prevailing for the same work in the same trade or occupation in the town in which such public works project is being constructed, remodeled, refinished, refurbished, rehabilitated, altered or repaired, or who fails to pay the amount of payment or contributions paid or payable on behalf of each such employee to any employee welfare fund, or in lieu thereof to the employee, as provided by subsection (a), shall be fined not less than two thousand five hundred dollars but not more than five thousand dollars for each offense .... In addition, if it is found by the contracting officer representing the state or political subdivision thereof that any mechanic, laborer or workman employed by the contractor or any subcontractor directly on the site for the work covered by the contract has been or is being paid a rate of wages less than the rate of wages required by the contract to be paid as required by this section, the state or contracting political subdivision thereof may (A) by written notice to the contractor, terminate such contractor's right to proceed with the work or such part of the work as to which there has been a failure to pay said required wages and to prosecute the work to completion by contract or otherwise, and the contractor and his sureties shall be liable to the state or the contracting political subdivision for any excess costs occasioned the state or the contracting political subdivision thereby .... The contracting department of the state or the political subdivision thereof shall within two days after taking such action notify the Labor Commissioner in writing of the name of the contractor or subcontractor, the project involved, the location of the work, the violations involved, the date the contract was terminated, and steps taken to collect the required wages.

76c[4] (overtime wage statute) (count two); and (3) the general contractor, as a matter of contract law, was liable for payment of wages pursuant to its contract for the project (count three). In each count, the commissioner relied on his authority to bring an action pursuant to the wage collection statute [General Statutes § 31-72]."[5] Id., 41–43.

"[T]he trial court granted the defendants' motion to strike each count of the amended complaint. The court did so on two grounds. First, the court concluded that the commissioner had no authority to bring suit, on behalf of a subcontractor's employees, against the general contractor or its bonding company. Second, the

"(c) The Labor Commissioner may make complaint to the proper prosecuting authorities for the violation of any provision of subsection (b). . . ."

[4] General Statutes § 31-76c provides: "No employer, except as otherwise provided herein, shall employ any of his employees for a workweek longer than forty hours, unless such employee receives remuneration for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

[5] General Statutes § 31-72 provides: "When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive, or fails to compensate an employee in accordance with section 31-76k or where an employee or a labor organization representing an employee institutes an action to enforce an arbitration award which requires an employer to make an employee whole or to make payments to an employee welfare fund, such employee or labor organization may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, and any agreement between him and his employer for payment of wages other than as specified in said sections shall be no defense to such action. The Labor Commissioner may collect the full amount of any such unpaid wages, payments due to an employee welfare fund or such arbitration award, as well as interest calculated in accordance with the provisions of section 31-265 from the date the wages or payment should have been received, had payment been made in a timely manner. In addition, the Labor Commissioner may bring any legal action necessary to recover twice the full amount of unpaid wages, payments due to an employee welfare fund or arbitration award, and the employer shall be required to pay the costs and such reasonable attorney's fees as may be allowed by the court. The commissioner shall distribute any wages, arbitration awards or payments due to an employee welfare fund collected pursuant to this section to the appropriate person."

court concluded that the general contractor was not an 'employer' as statutorily defined and, therefore, was not liable as alleged by the commissioner. Because the general contractor was not liable, its surety, ICSP, also was not liable." Id., 43–44.

"[W]ithout waiving his appellate rights to challenge the court's striking of the counts in the earlier complaint, the commissioner filed a second amended complaint. In that complaint, count one (amended count one) was brought against only the general contractor and alleged that, as was previously alleged against ICSP, the general contractor was liable pursuant to the payment bond. It also alleged that the general contractor was an 'employer' as statutorily defined. On January 31, 2000, the court granted the general contractor's motion to strike amended count one." Id., 44.

The commissioner then appealed to the Appellate Court, claiming that "each of the stricken counts was legally sufficient to survive the defendants' motions to strike. Specifically, he argue[d] that: (1) he has authority under the wage collection statute to collect unpaid wages on behalf of the subcontractor's employees; (2) ICSP, as a surety on the labor and materials bond, is liable for payment of wages to the subcontractor's employees; (3) the general contractor is liable for payment of wages to the subcontractor's employees; (4) there were disputed factual issues about the general contractor's alleged liability as a de facto direct employer of the subcontractor's employees; and (5) the amended prayer for relief, which included a request for injunctive relief, made all the stricken counts legally sufficient to withstand a motion to strike." Id., 44–45.

The Appellate Court concluded that the commissioner had authority under § 31-72 to bring any legal action necessary to recover the lost wages on behalf of the subcontractor's employees, including an action

against the general contractor and its surety on the payment bond pursuant to General Statutes §§ 49-41[6] and 49-42.[7] Id., 56. With respect to the first count of the amended complaint and the first count of the second

[6] General Statutes § 49-41 provides in relevant part: "(a) Each contract exceeding fifty thousand dollars in amount for the construction, alteration or repair of any public building or public work of the state or of any subdivision thereof shall include a provision that the person to perform the contract shall furnish to the state or the subdivision on or before the award date, a bond in the amount of the contract which shall be binding upon the award of the contract to that person, with a surety or sureties satisfactory to the officer awarding the contract, for the protection of persons supplying labor or materials in the prosecution of the work provided for in the contract for the use of each such person, provided no such bond shall be required to be furnished (1) in relation to any general bid in which the total estimated cost of labor and materials under the contract with respect to which such general bid is submitted is less than fifty thousand dollars, (2) in relation to any sub-bid in which the total estimated cost of labor and materials under the contract with respect to which such sub-bid is submitted is less than fifty thousand dollars, or (3) in relation to any general bid or sub-bid submitted by a consultant, as defined in section 4b-55. Any such bond furnished shall have as principal the name of the person awarded the contract.

"(b) Nothing in this section or sections 49-41a to 49-43, inclusive, shall be construed to limit the authority of any contracting officer to require a performance bond or other security in addition to the bond referred to in subsection (a) of this section, except that no such officer shall require a performance bond in relation to any general bid in which the total estimated cost of labor and materials under the contract with respect to which such general bid is submitted is less than twenty-five thousand dollars or in relation to any sub-bid in which the total estimated cost of labor and materials under the contract with respect to which such sub-bid is submitted is less than fifty thousand dollars. . . ."

As in effect in 1997, the date in question, § 49-41 pertained to contracts in which the labor and materials exceeded $25,000, rather than $50,000, as stated in the current version.

[7] General Statutes § 49-42 provides in relevant part: "(a) Any person who performed work or supplied materials for which a requisition was submitted to, or for which an estimate was prepared by, the awarding authority and who does not receive full payment for such work or materials within sixty days of the applicable payment date provided for in subsection (a) of section 49-41a, or any person who supplied materials or performed subcontracting work not included on a requisition or estimate who has not received full payment for such materials or work within sixty days after the date such materials were supplied or such work was performed, may enforce such person's right to payment under the bond by serving a notice of claim on the surety that issued the bond and a copy of such notice to the contractor named as principal in the bond within one hundred eighty days of the applicable payment date provided for in subsection (a) of section 49-41a,

amended complaint, respectively, the Appellate Court concluded that: (1) the surety could be held liable for the unpaid wages on the payment bond; id., 58; and (2) the general contractor could be held liable for the unpaid wages on the payment bond. Id., 61. With respect to the second count of the amended complaint, the Appellate Court concluded that the prevailing wage statute, § 31-53, does not authorize the commissioner to bring an action seeking the recovery of unpaid wages and, therefore, that the second count was legally insufficient to withstand the defendants' motion to strike. Id., 61–64. With respect to the third count of the amended complaint, which alleged that the general contractor had breached the public works contract, the Appellate Court concluded that the commissioner had pleaded insufficient facts to withstand the defendants' motion to strike. Id., 64. Finally, the Appellate Court concluded that it need not address the commissioner's claim for additional relief in the form of an affirmative injunction to enforce the state wage laws as the court already had found the first count legally sufficient. Id., 65.

We granted the defendants' petition for certification limited to the following issues: (1) "Did the Appellate Court properly determine that the [commissioner] has statutory authority under General Statutes § 31-72 to bring suit for unpaid wages on behalf of a subcontractor's employees against a general contractor and its bonding company pursuant to General Statutes §§ 49-41 and 49-42?" and (2) "Did the Appellate Court properly determine that the [commissioner] has statutory authority for imposing liability on the defendant surety under a payment bond where it is argued that the general contractor is not the employer of the subcontractor's

or, in the case of a person supplying materials or performing subcontracting work not included on a requisition or estimate, within one hundred eighty days after the date such materials were supplied or such work was performed. . . ."

employees?" *Commissioner of Labor* v. *C.J.M. Services, Inc.*, 262 Conn. 921, 812 A.2d 862 (2002). The commissioner presents one alternate ground for affirmance and two adverse rulings for our consideration pursuant to Practice Book § 84-11.[8] We affirm the judgment of the Appellate Court with respect to both certified questions; accordingly, we do not reach the alternate ground for affirmance. We reverse the first adverse ruling and affirm the second.

Our examination of the record and briefs and our consideration of the arguments of the parties persuades us that the judgment of the Appellate Court concerning both certified questions should be affirmed. The issues were resolved properly in the Appellate Court's concise and well reasoned opinion. *Commissioner of Labor* v. *C.J.M. Services, Inc.*, supra, 73 Conn. App. 39. Because that opinion fully addresses all arguments raised with respect to those issues in this appeal,[9] we adopt it as a proper statement of the applicable law concerning those issues. It would serve no useful purpose for us to repeat the discussion contained therein. See *Davis* v. *Freedom of Information Commission*, 259 Conn. 45, 55–56, 787 A.2d 530 (2002). We, therefore, do not reach the commissioner's alternate ground for affirmance that General Statutes § 31-2 (d) provides the commissioner

---

[8] Practice Book § 84-11 provides in relevant part: "(a) Upon the granting of certification, the appellee may present for review alternative grounds upon which the judgment may be affirmed provided those grounds were raised and briefed in the appellate court. Any party to the appeal may also present for review adverse rulings or decisions which should be considered on the appeal in the event of a new trial, provided that such party has raised such claims in the appellate court. . . ."

[9] The defendants also claim that the Appellate Court's determination that § 31-53 does not give the commissioner authority to sue for unpaid wages is inconsistent with its determination that the commissioner has authority to bring the action stated in the first count of the amended complaint because § 31-53 is referenced in that count. We disagree. The commissioner's reference to § 31-53 in the first count of both the amended and second amended complaints is superfluous.

with authority to seek injunctive relief against a general contractor and its surety to recover wages due to a subcontractor's employees.

We next consider the first adverse ruling made by the trial court and affirmed by the Appellate Court, review of which the commissioner seeks pursuant to Practice Book § 84-11. Specifically, the commissioner claims that the trial court and the Appellate Court improperly concluded that the commissioner's third count was pleaded insufficiently to withstand a motion to strike. We agree with the commissioner.

"We begin by setting out the well established standard of review in an appeal from the granting of a motion to strike. Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the court's ruling on the [defendants' motion] is plenary. See *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 232–33, 680 A.2d 127 (1996) [cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1997)]. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. *Bohan* v. *Last*, 236 Conn. 670, 674, 674 A.2d 839 (1996); see also *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 108–109, 491 A.2d 368 (1985). Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. *Waters* v. *Autuori*, 236 Conn. 820, 826, 676 A.2d 357 (1996). Moreover, we note that [w]hat is necessarily implied [in an allegation] need not be expressly alleged. *Clohessy* v. *Bachelor*, 237 Conn. 31, 33 n.4, 675 A.2d 852 (1996). . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted. . . . *Amodio* v. *Cunningham*, 182 Conn.

80, 83, 438 A.2d 6 (1980). Indeed, pleadings must be construed broadly and realistically, rather than narrowly and technically. . . . *Edwards* v. *Tardif*, 240 Conn. 610, 620, 692 A.2d 1266 (1997) . . . . *Doe* v. *Yale University*, 252 Conn. 641, 667, 748 A.2d 834 (2000)." (Internal quotation marks omitted.) *Gazo* v. *Stamford*, 255 Conn. 245, 260–61, 765 A.2d 505 (2001).

"Where the legal grounds for such a motion are dependent upon underlying facts not alleged in the plaintiff's pleadings, the defendant must await the evidence which may be adduced at trial, and the motion should be denied. *Fraser* v. *Henninger*, [173 Conn. 52, 61, 376 A.2d 406 (1977)]." *Liljedahl Bros., Inc.* v. *Grigsby*, 215 Conn. 345, 348, 576 A.2d 149 (1990).

We agree with the commissioner's claim that his allegation of contractual liability was sufficient to withstand the defendants' motions to strike. Although we agree with the Appellate Court's statement that "[a] bald assertion that the defendant has a contractual obligation, without more, is insufficient to survive a motion to strike"; *Commissioner of Labor* v. *C.J.M. Services, Inc.*, supra, 73 Conn. App. 64; upon reviewing the contents of the commissioner's amended complaint, we disagree with that court's characterization of the allegations found therein as a "bald assertion." Id. The commissioner alleged in count three that "[the general contractor] was required to pay prevailing wages to all mechanics, laborers, and workmen on said project pursuant to the contract for said public works project . . . ." The commissioner set forth a specific contractual obligation and alleged that it had not been met. Whether the terms of the contract support that allegation is a factual question to be determined by the fact finder and, therefore, is not at issue when the trial court considers a motion to strike.

The defendants claim that the Appellate Court correctly found that the third count lacked sufficient facts

to support a cause of action pursuant to *Donar* v. *King Associates, Inc.*, 67 Conn. App. 346, 786 A.2d 1256 (2001). We conclude that the defendants' and the Appellate Court's reliance on the *Donar* case is misplaced. That case concerned a subcontractor's motion to strike portions of the defendant's counterclaim. The trial court granted the motion to strike because the specific terms of the subcontract, which actually were set forth in the counterclaim, failed on their face to support the claim for indemnification. Id., 347–50. The Appellate Court affirmed the judgment of the trial court. Id., 350. We conclude that *Donar* does not stand for the broad proposition that the specific terms of a contract must be alleged in order for a claim sounding in contract law to survive a motion to strike. Rather, the Appellate Court concluded in *Donar* that when specific contract terms are alleged and they do not support the claim presented, the claim cannot withstand a motion to strike. Id., 349–50. That is not the case here.

The defendants also argue that this claim is insufficient because the commissioner lacks authority to bring a contract action on behalf of the subcontractor's employees. This argument merely restates the defendants' arguments with respect to the commissioner's authority under § 31-72 and is equally unavailing. We conclude, therefore, that the commissioner's third count was sufficient to withstand the defendants' motion to strike and reverse the Appellate Court's holding to the contrary.

The second adverse ruling presented by the commissioner concerns the Appellate Court's determination with respect to count two of the amended complaint that § 31-53 does not permit recovery of unpaid wages. Our examination of the record and briefs and our consideration of the arguments of the parties persuades us that the judgment of the Appellate Court concerning this issue should be affirmed. The issues were resolved

properly in the Appellate Court's concise and well reasoned opinion. *Commissioner of Labor* v. *C.J.M. Services, Inc.*, supra, 73 Conn. App. 39. Because that opinion fully addresses all arguments raised with respect to this issue, we adopt it as a proper statement of the applicable law concerning this issue. It would serve no useful purpose for us to repeat the discussion contained therein. See *Davis* v. *Freedom of Information Commission*, supra, 259 Conn. 55–56.

The judgment of the Appellate Court is reversed only as to count three of the amended complaint; the judgment of the Appellate Court is affirmed as to counts one and two of the amended complaint and as to count one of the second amended complaint, and the case is remanded to the Appellate Court with direction to reverse the trial court's granting of the motion to strike count three of the amended complaint and for further proceedings on counts one and three of the amended complaint and on count one of the second amended complaint.